STATE EX REL. ATTORNEY GENERAL *v.* CHICAGO MILL &
LUMBER CORPORATION.

Opinion delivered December 21, 1931.

1012

*Hal L. Norwood,* Attorney General and *John M. Rose,* for appellant.

*W. R. Statterfield* and *Daggett & Daggett,* for appellees.

*J. G. Williamson, Lamar Williamson* and *Adrian Williamson, amici curiae.*

HART, C. J., (after stating the facts). The correctness of the decree of the chancery court depends upon the proper interpretation to be given to what is commonly known as our "back tax statute."

Our original back tax act was passed by the Legislature of 1887, and its title recites that it is "An act to provide for the collection of overdue taxes from corporations doing business in the State." Acts of 1887, p. 33; Kirby's Digest, §§ 7204-7213, inclusive. This act was amended by the Legislature of 1911 so as to fix the compensation to be paid to special counsel employed to assist the Attorney General in the enforcement of the act. Acts of 1911, p. 324. This act came up for construction by the court in the case of *State* v. *Kansas City & Memphis Ry. & Bridge Co.,* 106 Ark. 248, 153 S. W. 614, where it was held that, under the provisions of the act, the State could not recover back taxes for undervaluation made in assessing property, and that a review by the courts was only permitted when the assessing officers had proceeded on a wrong basis of valuation in omitting some property or element of value, or in adopting the wrong basis of estimating value.

In order to correct this supposed defect in the act, the Legislature of 1913 amended the former act by inserting a provision for the recovery of back taxes where an assessment was made on an inadequate valuation or undervaluation of the property. The amended act also provided that it should be construed as retrospective as well as prospective in operation. This amended act came before the court for construction in *State* v. *K. C. & Memphis Ry. & Bridge Co.,* 117 Ark. 606, 171 S. W. 248.

The first section with the word "or" inserted in brackets is copied in the statement of facts by the court, and reads as follows:

"Where the Attorney General is satisfied from his own investigation, or it is made to appear to him by the statement in writing of any reputable taxpayer of the

State, that, in consequence of the failure from any cause to assess and levy taxes, or because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money of any property hereinafter mentioned, or because of any inadequate or insufficient valuation or assessment of such property or undervaluation thereof, or from any other cause, that there are overdue and unpaid taxes owing to the State, or any county or municipal corporation, or road district, or school district, by any corporation, (or) upon any property now in this State which belonged to any corporation at the time such taxes should have been properly assessed and paid, that it shall become his duty to at once institute a suit or suits in chancery in the name of the State of Arkansas for the collection of the same in any county in which the corporation owing such taxes may be found, or in any county in which any part of such property as may have escaped the payment in whole or in part of the taxes, as aforesaid, may be situated, in which suit or suits the corporation owing such taxes, or any corporation (or person) claiming an interest in any such property as may have escaped taxation as aforesaid, shall be made a party defendant, and the Governor is authorized to employ any attorneys that may be necessary to assist the Attorney General in such suits; provided, that this act shall be construed as retrospective as well as prospective in operation.''

Although there is no express declaration of the court to that effect, it is apparent from the insertion of the word ''or'' in brackets by the court, and from its reasoning in the case, that the court considered that the word ''or'' had been left out of the act as amended by the Legislature of 1913 by inadvertence or clerical mistake. With the word ''or'' omitted, the terms of the act would be restricted or limited to property in existence in the State at the time of the bringing of the back-tax suit instead of enlarging its provisions so as to provide for the recovery of back taxes where the property had been grossly undervalued in making the original assess-

ment. With the word "or" omitted, it is plain that the statute would give the Attorney General the right to bring suit for back taxes where they were due by any corporation upon any property now in the State which belonged to the corporation at the time such taxes should have been properly assessed, the word "now" being used as contemporaneous with the thing to be done, which was the bringing of the back-tax suit. It is manifest from the title of the act, and from the context, that the Legislature did not intend to omit the word "or" in the act as amended in 1913, because the amended act provides that suit may be brought in any county in which the corporation owing such taxes may be found, thereby indicating that a personal judgment might be rendered against the corporation owing the taxes. It further provides that suit might be brought in any county in which any part of such property might be located.

In such event, a corporation owing the taxes or any corporation claiming an interest in the property shall be made a defendant, thereby indicating that a subsequent sale of the property should not defeat an action for the recovery of back taxes. The section concludes with a proviso that the act shall be construed as retrospective as well as prospective in operation.

It is a well-settled principle of statutory construction that statutes should receive a common-sense construction, and, where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied. This is but making the strict letter of the statute yield to the obvious intent of the Legislature. Lewis' Sutherland Statutory Construction (2d ed.), vol. 2, pp. 796, 797.

It is the office of judicial construction to supply such omitted words as give effect to the act, if this can be done within the reasonable scope of language used by the Legislature, when read in connection with the purposes of the act. *Croze* v. *St. Mary's Canal Mineral Land Co.,* 153 Mich. 363, 117 N. W. 81.

In order to determine whether the omission of a word in an amended act was a mere inadvertence, the prior and subsequent legislation on the same subject may be sought to establish that fact. *Hutchins* v. *Commercial Bank,* 91 Va. 68, 20 S. E. 950.

This court, in numerous cases, has announced the same principle as to substitution, elimination or supplying words in conformity to the obvious spirit and purposes of the act in attempting to carry out the obvious intention of the Legislature. *Haney* v. *State,* 34 Ark. 263; *Bowman* v. *State,* 93 Ark. 168, 129 S. W. 80; and *Williams* v. *State,* 99 Ark. 149, 137 S. W. 927, Ann. Cas. 1913A, 1056, and cases cited.

The view that the word ''or'' was omitted in the amended act of 1913, through inadvertence or clerical mistake is manifest by the reasoning of the court in the case of *State* v. *K. C. & Memphis Ry. & Bridge Co.,* 117 Ark. 606, 174 S. W. 248. In that case the court said that, taking into consideration the origin and history of the legislation on the subject and the language of the different provisions, and particularly of that provision which restricts the operation of the act to property ''now in this State,'' that is, within the jurisdiction of the courts of the State at the time, it was evident that the statute was intended to afford a complete remedy for the collection of back taxes, and operated retrospectively as well as prospectively, independent of any express declaration to that effect.

It is insisted, however, that the statute does not provide for the collection of back taxes on personal property, but we think that this view is opposed to our later decisions on the subject. In *State* v. *Bodcaw Lumber Co.,* 128 Ark. 505, 194 S. W. 692, the court expressly held that our back-tax statute refers not only to tangible property omitted from former assessments, but also back taxes omitted from assessments on capital stock of a corporation. The same principle was reaffirmed in *State* v. *Fort Smith Lumber Co.,* 131 Ark. 40, 198 S. W. 702, where it was held in a back-tax suit that a

domestic corporation in returning its capital stock for taxation cannot deduct investments of its surplus in shares of stock in other corporations in this State. In this case an application for a writ of certiorari was denied by the Supreme Court of the United States. *Fort Smith Lbr. Co.* v. *State,* 251 U. S. 513, 40 S. Ct. 304.

In the later case of *White River Lumber Co.* v. *State,* 175 Ark. 956, 2 S. W. (2d) 25, the court held that the provisions of our back-tax statute act do not entitle the State to personal judgment against a corporation, enforcible against its general assets in a suit for back taxes on lands undervalued, but merely authorize the court to find the amount due, declare same a lien on the lands, and order each tract sold for back taxes, unless paid within three months after the decree. The court, however, in its opinion in construing the statute, said that it gave the State a right to enforce its claim for back taxes against any corporation whose property might be of such a character that its payment might be enforced merely by the rendition of a personal judgment. Therefore we are of the opinion that the statute was intended to give the State the right to recover back taxes where there had been a gross undervaluation of the property in the hands of the corporation, whether it was real or personal property.

In this connection, it may be stated that in *White River Lumber Co.* v. *State,* 279 U. S. 692, 49 S. Ct. 457, it was held that our back-tax statute is not invalid under the equal protection clause of the Fourteenth Amendment because it is limited to the recovery of such additional taxes on lands of corporations and does not extend to the recovery of such additional taxes on lands of natural persons, which may likewise have been assessed at an inadequate valuation.

In the case of personal property, which has gone out of existence, the only remedy of the State in the collection of back taxes would be to take a personal judgment against the corporation which should have assessed the

property as its owner for the years in which it was omitted or in which there had been a gross undervaluation of it within the meaning of the statute. As we have already seen, where the property was still in existence, a lien might be attached to the property of the corporation which owned it at the time the back-tax suit was brought.

In *Weyerhaueser* v. *Minnesota,* 176 U. S. 550, 20 S. Ct. 485, it was said by the court that it agreed with the Supreme Court of the State of Minnesota that a gross undervaluation of property is within the principle applicable to an entire omission of property. The reason given was that otherwise the power and duty of the Legislature to equalize their burdens might be defeated by the fraud of public officers, perhaps induced by the very property owners who afterwards claimed its illegal advantage. Continuing, the court said that, if an officer omits to assess any property or grossly undervalues it, he violates his duty, and the property and its owners escape their just share of the public burdens.

In construing the back-tax statute of the State of Wisconsin, the Supreme Court of that State, in *State* v. *Pors,* 107 Wis. 420, 83 N. W. 706, 51 L. R. A. 917, said that the general purpose of legislation of this class is to provide means for enforcing the obligations of corporations to contribute to the existence of government according to the taxable property owned by them whenever they shall have escaped or avoided that obligation. The court also said that this purpose would in a large measure fail, if a disposal, consumption, or removal of personal property after the time when assessments should have been made, prevents its reassessment. The principle at the foundation of these reassessment laws is that the owner of property is under obligation to the State to pay a sum in taxes in proportion to other taxed property. This case was cited with approval in Cooley on Taxation, (4th ed.) vol. 1, § 59.

In summing up, it may be said that our statute provides for the collection of back taxes on personal property by personal judgment against the corporation which

owned it at the time it was omitted from taxation or was so grossly undervalued as to amount to an evasion of taxation; or if such property had gone into the hands of a subsequent purchaser, he might be made a party to the action, and the lien of the State enforced against the property itself.

In the application of these principles of law to the present case, it may be said that the court properly held that the suit against the Paepcke Corporation should be dismissed for want of jurisdiction. It is true that, under the allegations of the complaint, back taxes for the years 1927 to 1930 are sought to be recovered, and that the Paepcke Corporation owned such property for at least one year during said period of time, but it is equally true from the allegations of the complaint that the Paepcke Corporation is a foreign corporation and is not now doing business in the State. The act expressly provides for the collection of back taxes in any county in which the corporation owing such taxes may be found. In this connection, we quote from the complaint the particular allegations on this point: .

"The defendant, Chicago Mill & Lumber Corporation, is a foreign corporation organized and existing under the laws of the State of Delaware, said company having been incorporated on October 19, 1928, and is authorized to do business in Arkansas. The Chicago Mill & Lumber Company was organized prior to the year 1926, under the laws of the State of Illinois. On October 23, 1928, said company changed its name to Paepcke Corporation," and on February 26, 1929, the Paepcke Corporation filed with the Secretary of State of the State of Arkansas a certificate of withdrawal from this State. Neither the Chicago Mill & Lumber Company nor the Paepcke Corporation is authorized to do business in Arkansas, and neither of said companies has designated an agent in Arkansas upon whom service of process can be made, although the said Paepcke Corporation is doing business in the State,

"The capital stock of the said Chicago Mill & Lumber Corporation and Paepcke Corporation is, and has always been, owned by the same stockholders, and the business of said companies is conducted by the same individuals constituting the board of directors of said companies. Plaintiff is informed and believes, and therefore alleges, that the said Chicago Mill & Lumber Company (now Paepcke Corporation) owned the machinery and stock of lumber hereinafter referred to at West Helena and Blytheville until the incorporation of the Chicago Mill & Lumber Corporation on October 19, 1928, and that since that date the latter company has owned said properties."

It will be noticed that the complaint specifically alleges that the Paepcke Corporation, on February 26, 1929, filed with the Secretary of State a certificate of withdrawal from this State, and that it is not authorized to do business in the State of Arkansas. Hence, under the very terms of the act, it is not subject to be sued for back taxes because it is not found within the State in the construction of the act.

In the next place, it is essential to the maintenance of a suit *in personam* against a foreign corporation that the corporation be subject to the jurisdiction of the courts of the State in which the suit is brought, or that it consent to the jurisdiction. 14A, C. J., p. 1368.

In *St. Louis, S. W. Ry. Co. of Texas* v. *Alexander*, 227 U. S. 218, 33 S. Ct. 245, it was held that, in order to hold a corporation personally liable in a foreign jurisdiction, it must appear that the corporation was within the jurisdiction, and that process was duly served on one of its authorized agents. Numerous other decisions of the Supreme Court of the United States to this effect are cited in a case note to 14A C. J. p. 1368.

In our view of the matter, it does not make any difference what caused the Paepcke Corporation to withdraw from the State. Under the allegations of the complaint itself, it is a foreign corporation, and is not authorized to do business in this State. Neither does it have an

agent in this State upon whom service of process can be made. Therefore, under the allegations of the complaint itself, we think the court was without jurisdiction to render a personal judgment against the Paepcke Corporation, and properly so held. It will be noted that the corporation did not enter its appearance to the action, but moved to quash the service of summons upon it for the reason that it was a foreign corporation and appeared for no other purpose.

The case against the Chicago Mill & Lumber Corporation stands upon a different footing. According to the allegations of the complaint, which are admitted by the demurrer, the Chicago Mill & Lumber Corporation was organized under the laws of the State of Delaware on October 19, 1928, and was authorized to do business in the State of Arkansas. It does not make any difference that its capital stock and that of the Paepcke Corporation have always been owned by the same stockholders, and that the business of said companies is conducted by the same individuals, constituting a board of directors of said company. Under the allegations of the complaint, the Paepcke Corporation was organized in the State of Illinois, and the Chicago Mill & Lumber Corporation was organized under the laws of the State of Delaware, and the courts of this State would have no jurisdiction in this suit to inquire into the reason for the organization of these corporations. As we have construed our back tax statute, no personal judgment can be rendered against a corporation except for the years it has omitted or underassessed its own property. It can not be made liable for the failure in this respect of another corporation to whose property it has succeeded. In such cases relief can only be had by proceeding against such property of the defunct corporation as now may be in existence in this State.

Acording to the allegations of the complaint, the Chicago Mill & Lumber Corporation, which was organized under the laws of the State of Delaware on October

19, 1928, has since that date owned the property which formerly belonged to the Paepcke Corporation. The Attorney General has sued to recover back taxes against it for the years 1927 to 1930, both inclusive. Under the principles of law above announced, it could not do this; but could only recover back taxes for undervaluations for the time during which the Chicago Mill & Lumber Corporation controlled the property, which, under the allegations of the complaint, was for the years 1929 and 1930.

The court properly held that the Chicago Mill & Lumber Corporation could not be proceeded against personally for gross undervaluations made by any other corporation, and that it might be made a party to a suit for undervaluations for such other corporations, provided the complaint alleged that such property was still in existence in this State. In that event the property itself might be proceeded against for the collection of the back taxes, although it was in the hands of the Chicago Mill & Lumber Corporation. The court erred, however, in holding that a personal judgment could not be rendered against the Chicago Mill & Lumber Corporation for undervaluation of its property in assessments during the years 1929 and 1930.

The record shows that the Chicago Mill & Lumber Corporation has complied with our statutes relative to foreign corporations doing business in this State; that its principal office is maintained in West Helena, Phillips County, Arkansas; that said office is in charge of F. W. Schatz, vice-president and general manager, who is the legally designated agent for service of process. Section 1151 of Crawford & Moses' Digest provides that, where the defendant is a foreign corporation having an agent in this State, the service may be upon such agent. Section 1826 of the Digest, which is a part of our act prescribing the terms upon which foreign corporations may do business in this State, provides, among other things, that such corporation shall designate its general office or place of business in the State, and shall name an agent

upon whom process may be served. Section 10,204 of the Digest, which is a part of our back-tax statute, provides that the suit may be brought in any county in which the corporation owing such taxes may be found. Therefore we are of the opinion that, for all back taxes owed by the Chicago Mill & Lumber Corporation, it was properly sued in Phillips County.

As the pleadings now stand, it could not be made a party defendant, as having in its hands property which another corporation had failed to properly assess for certain years, for the reason that it is not alleged in the complaint that such property is still in existence in this State. It will be noted that the act provides that suit may be brought in any county in which the corporation owing such taxes may be found, or in any county in which any part of such property may be found or may be situated.

For the errors indicated, the decree will be reversed, and the cause will be remanded for further proceedings in accordance with the principles of equity and not inconsistent with this opinion.

Butler, J. (dissenting). I respectfully dissent from that part of the opinion of the majority in which the following statement is made: "The court properly held that the Chicago Mill & Lumber Corporation could not be proceeded against personally for gross undervaluation made by any other corporation."

I am of the opinion that the allegations of the complaint, if established by proof, entitled a recovery against the Chicago Mill & Lumber Corporation for back taxes for gross undervaluation made by the Paepcke Corporation for the years 1927 and 1928, for the reason that these allegations, if established, show a mere reorganization both in law and in fact, and that the corporations were in no wise changed except in name.

I am authorized to state that Justices Humphreys and Mehaffy agree with me in this dissent.