The Honorable Doug Wood State Representative 215 North Claremont Sherwood, AR 72116
Dear Representative Wood:
This is in response to your request for an opinion concerning advertising and promotion commissions and hotel/restaurant taxes. Your questions have been restated and answered in the order presented:
 (1) Is the City required by law to give public notice under Arkansas Code of 1987 Annotated 26-75-602 that petitions may be submitted to the governing body calling for an election?
The answer to this question appears to be no. Section26-75-602(a)(2) states in pertinent part:
 The governing body of a city levying the tax authorized in this subchapter shall submit the question of levying the tax to the electors of the city if petitions signed by not less than five hundred (500) qualified electors of the city, requesting it, are filed with the governing body within thirty (30) days after the adoption of the ordinance levying the tax.
A review of A.C.A. 26-75-602(a)(2) does not suggest that notice be given for submission of petitions by the electorate, nor does there appear to be any other authority to that effect. It is significant to note in this regard that publication of the ordinance levying the tax must be in accordance with law. Publications of enacted ordinances is specifically prescribed in A.C.A. 14-55-206.
(2) Can an advertising and promotion commission expend motel and restaurant taxes on behalf of a central improvement district for overall maintenance and general renovation-type work? Also, can restaurant and hotel tax funds be used to directly advertise private enterprises?
It should be noted in this regard that taxes must be used for the specific purposes for which they were levied. Bell v. Crawford County, 287 Ark. 251, 697 S.W.2d 910, cert. denied, 106 S.Ct. 1638
(1985). A.C.A. 26-75-604 states that all taxes collected are to be credited to the "city advertising and promotion fund." Section26-75-606 addresses the use of funds credited to the "advertising and promotion fund," and states:
 (a)(1) All funds credited to the city advertising and promotion fund pursuant to this subchapter shall be used for advertising and promoting the city and its environs or for the construction, reconstruction, extension, equipment, improvement, maintenance, repair, and operation of a convention center in the city, and facilities necessary for, supporting or otherwise pertaining to, a convention center, or for the payment of the principal of, interest on, and fees and expenses in connection with, bonds as provided in this subchapter in the manner as shall be determined by the city advertising and promotion commission.
 (2) The commission is the body that determines the use of the city advertising and promotion fund. Pursuant to this section, if the commission determines that funding of the arts is necessary for or supporting of its city's advertising and promotion endeavors, it can use its funds derived from the hotel and restaurant tax.
 (b) Any city of the first class which is authorized to levy and does levy a two percent (2%) or three percent (3%) gross receipts tax on the gross receipts or gross proceeds derived from furnishing hotel or motel accommodations and upon the gross receipts or gross proceeds of restaurants and similar establishments, as authorized in this subchapter, is authorized to use or pledge all, or any part of, the revenues derived from the tax for the purposes prescribed in this subchapter, or for the operation of tourist-oriented facilities including, but not limited to, theme parks and other family entertainment facilities or the retirement of bonds issued for the establishment and operation of other tourist-oriented facilities including, but not limited to, theme parks and other family entertainment facilities. These revenues shall be used or pledged for the purposes authorized in this subsection only upon approval of the city advertising and promotion commission created pursuant to this subchapter.
It does not appear that taxes collected by the Commission could be expended on behalf of central improvement districts generally. To the extent that facilities within the central improvement district fall within the category of specific uses for which the taxes may be expended, funds generated by the taxes may be used for such purposes. See also A.C.A. 26-75-613.
It must be concluded that the answer to your question with respect to the direct advertisement of private enterprises is "no". This follows from the language of 26-75-606(a) authorizing the use of funds "for advertising and promoting THE CITY AND ITS ENVIRONS". (Emphasis added.)
(3) (a) What is the definition of "prepared food" as indicated in the act? For example, are candy, popcorn, and pre-wrapped sandwiches considered "prepared food" Is heating a frozen pizza considered prepared food?
(b) What is the definition of "restaurant, cafe and other" as noted in the law?
(c) Should "carry out" food be taxed since it is not for "on premise" consumption?
(d) When a business has both "carry out" and "on premise" consumption with seating provided:
(i) Should food sold for "on premise" consumption be taxed?
 (ii) If a business has 50% or more "carry out" sales, should it collect the tax on all sales?
(e) Should any "for profit" food operations collect the tax? For example, when a food service supplies a hospital cafeteria or when it supplies a school cafeteria?
(f) Should private, non-profit, clubs and organizations that serve food and/or drinks to its members collect the tax?
(g) Should convenient stores collect the tax? For example, when it has seating, or when it does not have seating?
(h) Should alcoholic beverages be taxed when served with or without a meal?
It must be initially noted in response to these questions that the Attorney General, as a member of the executive department, cannot provide controlling definitions of terms where the legislature has elected not to provide them. And the Arkansas Supreme Court has stated that where a statute is silent on a particular part, it must be interpreted on a case by case basis. Liberty Mutual Insurance Co. v. Billingsley, 256 Ark. 947, 511 S.W.2d 476 (1974).
General rules of statutory construction may, nevertheless, offer some guidance in addressing your questions. It is well established that the first rule in determining the meaning of a legislative enactment is to construe it just as it reads, giving words their ordinary and usually accepted meaning in common usage. Bolden v. Watt, 290 Ark. 343, 719 S.W.2d 428 (1986). Legislative intent must be discerned from the language employed if a statute is clear on its face. Mourot v. Arkansas Bd. of Dispensing Opticians, 285 Ark. 128, 685 S.W.2d 502 (1985).
The word "prepare" is defined in Webster's New Collegiate Dictionary (1977 Ed. at 909) as "to make ready beforehand for some purpose, use, or activity." "Prepared" means "subjected to a special process or treatment." Id. The context in which the term "prepared food" appears in A.C.A. 26-75-602 may also offer guidance in this instance. The tax is levied upon the gross receipts or proceeds ". . . of restaurants, cafes, cafeterias, and other establishments, as defined in the levying ordinance, engaged in the business of selling prepared food for consumption on the premises. . . ." A.C.A. 26-75-602(a)(1)(A). It becomes apparent that the key inquiry in determining the applicability of the tax is whether the establishment exhibits characteristics similar to "restaurants, cafes, (and) cafeterias" all of which, according to the premise set forth in the legislation are ". . . engaged in the business of selling prepared food for consumption on the premises in the city." A.C.A. 26-75-602(a)(1)(A). Thus, while items such as candy, popcorn, pre-wrapped sandwiches, and frozen pizza arguably do not constitute "prepared food," it is my business that the essential inquiry must focus on the "business" of the establishment.
The rule of ejusdem generis must be considered in response to your question regarding the definition of "restaurant, cafes, cafeterias, and other establishments." This is a rule of statutory construction and provides that where particular words are followed by more general terms, the general words are construed as applicable to things of the same species or kind as the particular term. Mason v. Inter-City Terminal Ry. Co.,158 Ark. 542, 251 S.W. 10 (1923). The term "other" would thus be construed to mean facilities similar to restaurants, cafeterias, or cafes which, according to the law, are engaged in the business of selling prepared food for consumption on the premises in the city. A.C.A. 26-75-602(a)(1)(A).
In response to your question concerning "carry out" food, as previously noted, the tax is not item specific. Rather, the tax is levied upon the gross receipts or gross proceeds of establishments, depending upon the type of business in which they are engaged. If the establishment is not "engaged in the business of selling prepared food for consumption on the premises," the tax will not apply. This is a question of fact to be resolved based upon the particular facts and circumstances in each instance. The fact that fifty percent (50%) or more of the sales are "carry out" would certainly be a factor to consider in assessing the type of business involved.
With respect to Question 3(e), a "for profit" food operation which supplies food to another entity is presumably not engaged in the business of selling prepared food for consumption on the premises. A.C.A. 26-75-602(a)(1)(A). The word "premises" obviously relates to the "establishment" in question. It may thus be concluded that the answer to this question is, generally, no.
In response to your question involving private, non-profit clubs and organizations, unless the club, similar to restaurants or cafes, is "engaged in the business of selling prepared food . . .", these tax provisions will not apply. While this is essentially a fact question to be resolved on a case by case basis, it may reasonably be concluded that such organizations do not typically fall within this category.
It appears that convenient stores, similarly, do not generally fall within the category of "restaurants, cafes, cafeterias, and other establishments . . . engaged in the business of selling prepared food for consumption on the premises." A.C.A. 26-75-602(a)(1)(A). The existence of seating on the premises would not necessarily be dispositive, if the store did not otherwise meet this criteria.
It is my opinion, with regard to a tax on alcoholic beverages sales, that these sales are to be included within the gross receipts or gross proceeds for tax purposes under A.C.A. 26-75-601
— 613, so long as the establishment involved falls within the specified category. (26-75-602(a)(1)(A)). The presence or absence of a meal would not be dispositive in that event.
(4) Are there any restrictions imposed by the statute upon who is qualified to be appointed to the advertising and promotion commissions? For example, is there a conflict of interest in appointing those persons who are responsible for collecting the tax from their own establishments? Is there a requirement for a cross section of businesses and individuals in the community or can the advertising and promotion commission limit its membership to major tourist operators or persons most directly impacted by the imposition of such taxes?
Membership on the advertising and promotion commissions is prescribed under A.C.A. 26-75-605 in pertinent part as follows:
 (a) Any city levying a tax pursuant to this subchapter, in the ordinance levying the tax, shall create a city advertising and promotion commission, to be composed of seven (7) members as follows:
 (1) Four (4) members shall be hotel, motel, or restaurant owners or managers who shall be appointed by the mayor with the approval of the governing body of the city for staggered terms of four (4) years; and
 (2) The remaining three (3) members of the commission shall be the mayor and two (2) members of the governing body of the city selected by the governing body.
The function of the commission is to determine the manner in which funds generated by the hotel and restaurant taxes are to be used. See A.C.A. 26-75-606(a)(2). The legislation reflects no restrictions with respect to membership, other than those requirements set forth under 26-75-605(a). Indeed, that provision explicitly authorizes and requires the membership of business representatives. It should also be noted in this regard that responsibility for collection of the tax is vested in the city and not in the commission. See A.C.A. 26-75-603.
There is, finally, no specific requirement with respect to a representative cross section of business. It appears that the mayor, with the approval of the city's governing body, has the authority to make this determination.
This is in response to your request for an opinion Assistant Attorney General Elisabeth A. Walker.