The Honorable Vic Snyder State Senator 324 South Valmar Little Rock, AR 72205
Dear Senator Snyder:
This is in response to your request for an opinion regarding the nomination of candidates for election by supporters of Ross Perot. Your questions are set out below and answered in the order posed.
 1. Are the people who nominated Perot's electors for the 1992 Arkansas ballot entitled to nominate candidates for any partisan statewide, district or local election up through November 1994?
 2. If the answer is yes, how may the Perot supporters nominate a candidate for the upcoming Lieutenant Governor's election if (1) there is a primary election; or (2) there is no primary election?
In my opinion, the answer to your first question is "yes." The supporters of Ross Perot meet the definition of a "political party" and may therefore nominate candidates for United States, state, district or local offices.
In general, political parties are authorized to nominate candidates for United States, state, district or local offices.See A.C.A. §§ 7-3-107 and 7-7-202(a) (1987). As you have noted, a political party is defined as "any group of voters which, at the last-preceding general election, polled for its . . . nominees for presidential electors at least three percent (3%) of the entire vote cast for the office. . . ." A.C.A. §7-1-101(1)(A) (Cum. Supp. 1991). You have noted, additionally, that Ross Perot polled greater than 3% of the votes in Arkansas in the 1992 presidential election.
The first rule in construing the meaning of a statute is to construe it just as it reads, giving words their ordinary and usually accepted meaning in common usage. Bolden v. Watt,290 Ark. 343, 719 S.W.2d 428 (1986). Established rules of statutory construction also dictate that legislative intent must be discerned from the language employed if a statute is clear and unambiguous on its face. Mourot v. Ark. Bd. of DispensingOpticians, 285 Ark. 128, 685 S.W.2d 502 (1985); Hot SpringsSchool Dist. No. 6 v. Wells, 281 Ark. 303, 663 S.W.2d 733
(1984).
Subsection (1)(A) of § 7-1-101 is clear and unambiguous in providing that a group of voters which, at the last-preceding general election, polled for its nominee for president at least three percent (3%) of the entire vote cast for that office, qualifies as a "political party." Accordingly, it is my opinion that the supporters of Ross Perot, who, as you note, polled greater than 3% of the votes in Arkansas in the 1992 presidential election, meet the definition of "political party." Accordingly, as a political party, the Ross Perot supporters may nominate candidates for United States, state, district or local offices.[1]
It is my opinion, with regard to your second question, that the Perot supporters may nominate a candidate for the upcoming Lieutenant Governor's election according to the procedure outlined in A.C.A. § 7-7-105(1)(A)-(E) (1987), if there is a primary election.[2] If there is no primary election, the Perot supporters may nominate a candidate for Lieutenant Governor according to the procedure outlined in A.C.A. § 7-7-105(3) (1987).
Section 7-7-105 states with regard to filling vacancies in the office of Lieutenant Governor that nominees shall be chosen as follows:
 (1)(A) Whenever a vacancy shall exist in [the office of Lieutenant Governor], the Governor shall certify in writing to the state committee of the respective political parties the fact of vacancy and shall request the respective state committee to make a determination and notify him in writing within ten (10) days with respect to whether the political party desires to hold a special primary election to choose a nominee of the party as a candidate for election to the office in which the vacancy exists;
 (B) If the state committee of any political party shall notify the Governor, within the time provided above, of their request to hold a special primary election, it shall be mandatory that any political party desiring to choose a nominee for election to the office in which the vacancy exists shall choose the nominee at a special primary election;
 (C) In issuing the proclamation calling for a special election to fill the vacancy in office, the Governor shall also specify the date on which the special primary elections shall be held and the date on which a runoff primary election shall be held in the event a candidate does not receive a majority vote. The proclamation of the Governor shall also establish the deadline for filing as a candidate for nomination, which deadline shall allow at least ten (10) days in which candidates may file for nomination;
* * *
 (E) Certificates of nomination of persons nominated at a special primary election shall be filed with, and the filing fees paid to, the appropriate official at least seven (7) days prior to the date for holding the special election to fill the vacancy in office.
With regard to the second part of your second question, reference should be made to A.C.A. § 7-7-105(3) (1987), which states that:
 If the state committee of any political party fails to notify the Governor, within the time provided in subdivision (1)(A) of this section, of the desire to hold a special primary election to choose a nominee of that political party as a candidate for election to fill the vacancy in office, or if the state committee of any political party timely notifies the Governor of the desire not to hold a primary election, the Governor shall, in issuing his proclamation calling for the special election, fix a deadline for filing as a nominee for election at the special election. In that event, nominations may be made upon certification of the chairman or secretary of a convention of delegates of a political party called and held in accordance with the rules of the party.
Accordingly, if there were no primary election, the Perot supporters could nominate a candidate for Lieutenant Governor by filing the candidate's name as a nominee for election prior to the deadline fixed by the Governor for so filing. The chairman or secretary of a convention of delegates of the party must also certify the nomination of the candidate.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sherry L. Daves.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] See also A.C.A. §§ 7-3-108(b) and 7-7-203(g) with regard to the requirements for newly organized political parties.
[2] Reference should also be made to other general statutory requirements for nomination of a candidate by a political party. For example, prior to having his or her name printed on the ballot at a primary election, a candidate must first file an affidavit of eligibility to office, a filing fee, a party pledge (if required by the party) (A.C.A. §§ 7-7-301(a) and -301(b)(2)), and a political practices pledge (A.C.A. § 7-7-301(c)). The secretary of the state committee of the political party must also make a determination that the candidate meets the eligibility requirements of the office sought. A.C.A. § 7-7-301(b)(1).
Subsequent to the primary election, the political party must meet additional requirements for nomination of its candidate to office. Before a candidate's name may be printed on the ballot in any general or special election, he or she must first have been certified as a nominee as having received a majority of the votes cast for the office at the primary election. A.C.A. §§ 7-7-1-1 and -102(a) (1987). See also A.C.A. §§ 7-3-107 and 7-7-401
(1987). The certificate of nomination must also be filed with the Secretary of State. A.C.A. § 7-7-402(a)(1) (1987).